Devvy KIDD, Plaintiff,

v.

DEPARTMENT OF JUSTICE,
Defendant.

No. CIV. A. 03–1976 (HHK).

United States District Court,
District of Columbia.

March 30, 2005.

Devvy Kidd, Annapolis, MD, Pro se.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff, Devvy Kidd ("Kidd"), proceeding *pro se,* brings this action against defendant, the United States Department of Justice ("DOJ"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* Kidd alleges that DOJ has improperly withheld documents in responding to her request for written communications between the Attorney General, the Secretary of the Treasury, the Commissioner of the Internal Revenue Service, their staffs, and various other government officials "dealing with Bob Schulz and the We the People Foundation." Compl. ¶¶ 5–6. Presently before the court are the parties' cross-motions for summary judgment [# 4, 9]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that DOJ's motion for summary judgment must be granted, while Kidd's motion must be denied.

### I. FACTUAL BACKGROUND

On March 10, 2002, Kidd filed two FOIA requests with DOJ's Office of Information and Privacy ("OIP"). Her first request sought "copies of all notes, which include hand-written material, memorandums, directives, correspondence, inter-agency memorandums, phone records and correspondence" generated by then-Attorney General John Ashcroft ("Ashcroft") and his staff, directed to then-Assistant Attorney General for Legislative Affairs Daniel J. Bryant ("Bryant"), then-Secretary of the Treasury Paul H. O'Neill, and then-IRS Commissioner Charles O. Rossotti, "dealing with Bob Schulz and the We the People Foundation." *Id.* ¶ 5; Ex. 1. Kidd also requested records Ashcroft and his staff received from the other named government officials. Kidd's second FOIA request sought the same types of communication generated by or directed to Bryant "dealing with Bob Schulz and the We the People Foundation." *Id* ¶ 6; Ex. 2. Kidd limited both requests to the time period between July 1, 2001 and March 1, 2002.

OIP received both of Kidd's requests on April 1, 2002. On April 10, 2002, OIP sent a letter to Kidd acknowledging receipt of her requests, and began its search for potentially responsive documents. On September 4, 2002, OIP dispatched a letter informing Kidd that "no responsive records were located" corresponding to her first request. Compl., Ex. 7. In response to this letter, Kidd combined her two FOIA requests and filed a single administrative appeal on September 16, 2002, stating that DOJ's failure to locate responsive documents "absolutely defies reality." *Id.* ¶¶ 12–13; Ex. 9. On October 18, 2002, OIP informed Kidd that her administrative appeal had been received but had not yet been processed due to a "substantial backlog of pending appeals received prior to yours." *Id.,* Ex. 10. Kidd wrote back to OIP on December 8, 2002, stating that she would file suit if she did not receive the documents she initially requested within twenty days of OIP's receipt of her letter. Kidd states she received a letter dated December 20, 2002, indicating that her appeal "had not even been assigned for processing yet." *Id.* ¶ 15. On February 5, 2003, Kidd filed suit in the Federal District Court for the Eastern District of California, seeking a court order compelling production of the requested documents.

By letter dated March 5, 2003, OIP affirmed its underlying "no responsive records" determination for Kidd's first FOIA request. Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), Ex. 4. On March 11, 2003, OIP belatedly addressed Kidd's second FOIA request, notifying her that a search of four offices within DOJ had located twenty-one documents, totaling eighty-six pages, all records of the agency's Office of Legislative Affairs. OIP provided Kidd with nine of those documents, containing fifty-six pages, "without excision." Def.'s Mot. at 5; Pl.'s Mot., Ex. 5. In addition, OIP enclosed a one-page document "with an excision made pursuant to Exemption 6 of FOIA, 5 U.S.C. § 552(b)(6), which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of others." *Id.* OIP also informed Kidd that five draft documents (totaling seven pages) would be withheld pursuant to Exemption 5 of FOIA, and that six additional documents (totaling twenty-two pages) were still under review pending consultation "with other components." *Id.* Finally, on April 9, 2003, OIP provided its final response to Kidd's second FOIA request. Along with this letter, OIP released, without excision, the twenty-two pages previously held for review. *Id.* The agency also released, with redactions, one of the seven pages previously withheld under Exemption 5, as well as several additional documents located pursuant to a supplemental search of agency records. *Id.*; Def.'s Statement of Material Facts not in Dispute ¶¶ 18–22. On September 24, 2003, this action was transferred from the Eastern District of California to this district.

## II. ANALYSIS

### A. Standard of Review

 FOIA provides for de novo review of an agency determination by the district court, and places the burden on "the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The agency may meet this burden by submitting affidavits or declarations that describe the withheld material in reasonable detail and explain why it falls within the claimed FOIA exemptions. *See Summers v. Dep't of Justice,* 140 F.3d 1077, 1080 (D.C.Cir.1998). Where the pleadings and affidavits or declarations show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law, summary judgment is the appropriate mechanism for resolving FOIA disclosure disputes. *See* Fed.R.Civ.P. 56(c); *Alyeska Pipeline Service Co. v. EPA,* 856 F.2d 309, 313–14 (D.C.Cir.1988). In addition, a district court may determine if a FOIA exemption is properly invoked on the basis of affidavits or declarations submitted by the government, *see Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), so long as the affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [ ] or by evidence of agency bad faith." *Landmark Legal Found. v. IRS,* 87 F.Supp.2d 21, 23 (D.D.C.2000) (citing *Miller v. Casey,* 730 F.2d 773, 776 (D.C.Cir. 1984)) (internal quotation marks omitted).

### B. Adequacy of the Search

 To prevail in a FOIA action, an agency must show that it made a good faith effort to search for the records requested, and that its methods were "reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990). The crucial determination in evaluating an agency's response to a document request is

"whether the *search* for those documents was *adequate*," not whether other possibly responsive documents might exist. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994) (internal quotation marks and citation omitted), *Perry v. Block*, 684 F.2d 121, 128 (D.C.Cir.1982); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.Cir.1990) (agency need not conduct exhaustive search). Affidavits that explain "in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance" with FOIA. *Perry*, 684 F.2d at 127.

DOJ presents the declaration of Melanie Ann Pustay, the Deputy Director of OIP, whose name also appears on the agency's letters to Kidd dated September 4, 2002; March 11, 2003; and April 9, 2003. For both of Kidd's FOIA record requests, this declaration attests to the records and databases searched, Def.'s Mot., Pustay Decl. ¶ 5; the general processes employed in the searches, *id.* ¶ 6; the search terms used, *id.* ¶¶ 7–8; the dates the searches were performed, *id.* ¶¶ 5, 8–10; the offices which conducted searches, *id.* ¶¶ 5, 9–11; and the records located, *id.* ¶¶ 14–17. These details are sufficient to establish the adequacy of DOJ's search as a preliminary matter, and in the absence of any argument from Kidd, the court grants summary judgment for DOJ on this issue.

## C. Exemption 5

■ Exemption 5 of FOIA permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision applies to all documents which are normally privileged from discovery. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). While Exemption 5 should be construed as narrowly as possible, *see Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980), the "deliberative process" privilege falls squarely within this exemption. *See Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 584–85 (D.C.Cir.1987).

■ The deliberative process privilege may be invoked by an agency upon the showing that the communication in question is both predecisional and deliberative. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C.Cir.1993) (citing *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C.Cir.1992)). A decision will be considered predecisional if "it was generated before the adoption of an agency policy." *Coastal States*, 617 F.2d at 866. Deliberative communications are those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. 1504. Documents protected by the privilege are those which would prematurely reveal the personal opinions of the author or the views of the agency on a decision not yet finalized at the time the document was created. *See Coastal States*, 617 F.2d at 866. "Draft documents, by their very nature, are typically predecisional and deliberative." *Exxon Corp. v. Dep't of Energy*, 585 F.Supp. 690, 698 (D.D.C.1983).

■ The rationale behind the deliberative process privilege is that public disclosure would prevent "the full and frank exchange of ideas" from "flow[ing] freely." *Mead Data Cent. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). The privilege serves to assure agency employees that they can provide a decisionmaker with their uninhibited opinion without fear of public scrutiny, to prevent premature disclosure of proposed policies, and to protect

against public confusion through the disclosure of document advocating or discussing reasons for policy decisions that were ultimately not adopted. *See Am. Petroleum Inst. v. EPA,* 846 F.Supp. 83, 88 (D.D.C.1994).

In this case, Kidd seeks the complete disclosure of the five withheld draft documents, consisting of six pages, as well as an unredacted copy of an already-released facsimile cover sheet, all used in formulating the final letter sent by Bryant to Congressman Roscoe Bartlett.[1] Def.'s Mot. at 15–16. DOJ asserts that these documents should be protected from disclosure by Exemption 5. *Id.* The agency submits that the draft letters "represent a preliminary and incomplete view of the ultimate position taken by DOJ regarding meetings with Schulz and his organization." *Id.* at 16. The agency justifies non-disclosure on the basis of its belief that the release of the documents would "inhibit drafters from freely exchanging ideas, language choices, and comments in drafting documents." *Id.*

Kidd's response to the agency's invocation of Exemption 5 is unconvincing. Kidd states that "[t]here is no reason why all documents shouldn't be released to Plaintiff except to protect information Defendant doesn't want the people to know, but that the people have the absolute right to know," and that "[t]his government belongs to the people and defendant works for the people of these united States of America [sic]." Pl.'s Resp. to Def.'s Mot. at 3 (emphasis original). While the court agrees with Kidd that "[t]his government belongs to the people and defendant works for the people of these united States of America [sic]," the court disagrees with her pronouncement that "[t]here is no reason why all documents shouldn't be released to Plaintiff except to protect information Defendant doesn't want the people to know." The reason for not requiring disclosure of all the documents Kidd seek is because the pertinent law exempts them from disclosure. The court concludes that DOJ's invocation of Exemption 5 to FOIA is appropriate, and denies Kidd's effort to compel disclosure of the five draft documents or the unredacted facsimile cover sheet.

### D. Exemption 6

Kidd also claims that OIP improperly redacted material under Exemption 6 in four of the documents it released to her. Exemption 6 of the FOIA serves to protect "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Courts have broadly interpreted the term "similar files" to include most information that "applies to a particular individual." *Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). In order to determine whether an agency properly invokes Exemption 6, the court must balance the privacy interest in non-disclosure against the public interest in the release of the information. *Lepelletier v. FDIC,* 164 F.3d 37, 46 (D.C.Cir. 1999).

Here, Kidd seeks to compel the agency to re-release three documents without the redactions OIP made pursuant to Exemption 6. The first document is a copy of an electronic mail message from Bryant to Patrick O'Brien. Def.'s Opp. at 18. The agency released the document to Kidd, redacting only Bryant's home telephone number. *Id.* While DOJ concedes that federal employees have a reduced expecta-

---

1. The final, signed letter sent from Assistant Attorney General Bryant's office to Congress-man Bartlett has been released in full to Kidd. Def.'s Mot. at 16; Pustay Decl. ¶ 20.

tion of privacy, the agency still seeks to protect certain personal information. *Id.* In balancing Bryant's strong interest in maintaining the privacy of his home telephone number against a weak public interest in learning such information, the court believes that disclosure has little bearing on the public's understanding of the way in which the Department of Justice or the Attorney General's office conducts its affairs or why any particular meeting was or was not held. *See Judicial Watch, Inc. v. Dep't of Commerce*, 337 F.Supp.2d 146, 176 (D.D.C.2004) (upholding agency decision to redact personal information such as home addresses and telephone numbers). As such, the court finds that DOJ properly invoked Exemption 6 to FOIA and therefore denies Kidd's motion to compel disclosure of an unredacted copy of the electronic mail message.

█ The second and third documents for which Kidd seeks to compel full disclosure are two constituent letters written by third parties to then-Senator Strom Thurmond and Congresswoman Ellen Tauscher regarding the "We the People Foundation." Def.'s Mot. at 18. The agency released both letters to Kidd, redacting only the names and home addresses of the letter writers. *Id.* DOJ argues that it withheld the names and addresses of the constituents because "[w]hen communicating with their Senator or Congressperson, these individuals did not expect that their names or home addresses would be subject to public scrutiny." *Id.* at 19. Providing personal identifying information commonly found in constituent letters does not advance the purposes of FOIA and, as such, may be withheld from FOIA requests. *Voinche v. FBI*, 940 F.Supp. 323, 329–30 (D.D.C.1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of ...

private citizens who wrote to government officials ...."); *see also Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1125 (7th Cir.2003) (finding that the core purposes of FOIA would not be served by the release of the names and addresses of persons who complained to FTC).

Kidd misconstrues the applicability of Exemption 6 in this case by arguing that "[t]he only person whose privacy could be at issue in this litigation is Bob Schulz ... [who] has no objection to any documents regarding him possessed by Defendant being provided to me." Pl.'s Mot., Kidd Decl. at 3. Here, the personal privacy which DOJ seeks to protect from "unwarranted invasion" does not involve Schulz, but rather third-party individuals who wrote private letters to their representatives. Kidd asserts no public interest in the disclosure of the names or addresses of these individuals. Accordingly, the court concludes that OIP properly redacted this information from the constituent letters pursuant to FOIA Exemption 6.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the United States Department of Justice's motion for summary judgment must be granted and Kidd's motion for summary judgment must be denied. An appropriate order accompanies this memorandum opinion.