FILED
United States Court of Appeals
Tenth Circuit

August 31, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

MARY M. HULL and NELSON B.
PHELPS, individually and on behalf
of the Association of US West
Retirees,

    Plaintiffs-Appellants,

v.

    No. 10-1410

INTERNAL REVENUE SERVICE,
UNITED STATES DEPARTMENT
OF THE TREASURY,

    Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:09-CV-00024-CBS-KMT)

---

Curtis L. Kennedy, Denver, Colorado, for Plaintiffs-Appellants.

Gretchen M. Wolfinger (John A. DiCicco, Acting Assistant Attorney General, and
Jonathan S. Cohen, Attorney, United States Department of Justice, Tax Division,
with her on the brief), Attorney, United States Department of Justice, Tax Division,
Washington, D.C., for Defendant-Appellee.

---

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Plaintiffs Mary Hull, Nelson Phelps, and the Association of US West Retirees

appeal a district court's order rejecting their Freedom of Information Act (FOIA) claim against Defendant Internal Revenue Service (IRS). This appeal focuses primarily on one question: Does Plaintiffs' FOIA request on its face seek only a third party's return information to which they are not entitled without the authorization of that third party? We conclude yes, it does, and, therefore, the IRS properly withheld the requested information in the absence of US West's consent. Accordingly, we affirm the judgment of the district court in favor of the IRS.

I.

Plaintiffs are retired employees of US West, Inc. and participants in the US West Pension Plan. According to Plaintiffs' 2008 FOIA request:

> On or about *March 15, 1996*, U S WEST, Inc. made a submission to the IRS under the Voluntary Compliance Review . . . Program [VCRP], in which submission the company fully described the problem [with some of its payments to U S WEST Pension Plan participants] and requested IRS grant approval to make adjusted pension payments . . . . On *August 28, 1996*, the IRS formally approved of U S WEST's proposal and issued a Compliance Statement mandating U S WEST pay the disputed claims within 90 days. . . .

Plaintiffs Appendix (Appx.) at 112. Plaintiffs requested:

> [A] complete copy set of all documents associated with the IRS handling of U S WEST's submission in 1996 resulting in the IRS Compliance Statement, plus all other associated records in the agency's file. . . . This FOIA request includes the full March 15, 1996 dated submission made [to the VCRP] by U S WEST and pension plan administrators, including supporting documents, supplemental reports, informal and formal discovery requests, orders, if any, and the written and electronic (e-mail) responses given thereto, including the August 28, 1996 dated IRS's Compliance Statement issued to U S WEST.

Id.

In a letter, the IRS informed Plaintiffs their FOIA request for "[VCRP] records regarding US West Pension Plan" sought "tax records" which "are confidential and may not be disclosed unless specifically authorized by law. We must receive U S West Pension Plan's written consent before we can consider releasing the information you requested." Id. at 114. The letter did not inform Plaintiffs if or how they could appeal this determination. Nonetheless, Plaintiffs appealed the IRS's response to the IRS's FOIA Appeals Office. That office provided essentially the same response, only with slightly greater detail:

> You asked for [VCRP] records regarding US West Pension Plan. . . . FOIA exemption 5USC 552 (b)(3) exempts from releasing documents that by statute can not be released. Internal Revenue Code § 6103 does not allow the release of documents to a person other than the taxpayer without their consent. Since the government did not receive a consent form . . . from US West Pension Plan allowing you to view their tax documents, the government is prohibited by statute from releasing these documents to you. In conclusion the disclosure office has fulfilled their requirements under FOIA.

Id. at 119. The IRS then advised Plaintiffs of their "judicial remedies" under FOIA: "You may file a complaint in the United States District Court for the District in which you reside, or have your principal place of business, or in which the agency records are located, or in the District of Columbia." Id.

Shortly thereafter, Plaintiffs did just that. They filed a complaint in Colorado federal district court pursuant to the civil enforcement provision of FOIA, 5 U.S.C. § 552, seeking the IRS's disclosure of the requested information or, alternatively, an

3

in camera court review of the withheld information.[1]  The IRS filed a motion for summary judgment, arguing that by failing to provide US West's authorization to receive its return information, Plaintiffs had failed to file a perfected FOIA request and, thus, had failed to exhaust their administrative remedies.  According to the IRS, such failure meant the district court did not have jurisdiction to adjudicate Plaintiffs' FOIA claim.  In support of its motion, the IRS submitted the sworn declarations of three IRS agents who had reviewed Plaintiffs' FOIA request and determined it sought a third party's return information without that party's authorization.  Plaintiffs filed their own motion for summary judgment, maintaining they had exhausted their administrative remedies, demanding the information's immediate release, contesting the IRS's categorization of the information as exempt return information, and, alternatively, requesting an in camera review of the information.

The district court granted the IRS's motion for summary judgment, denying Plaintiffs' motion and request for an in camera review.  The court determined "[b]ecause information submitted under [the VCRP] *could* implicate tax liability, the

---

[1] While the district court litigation proceeded, Plaintiffs filed another FOIA request (with a different IRS disclosure office) in 2009 seeking the same information.  Citing Section 6103, the IRS responded "as this request is equally invalid [as Plaintiffs' 2008 FOIA request for the same information], we are closing our file on this matter."  Appx. at 120.  Plaintiffs filed an amended complaint, incorporating facts pertaining to the 2009 request.  Because the 2008 and 2009 requests sought the same information and received basically the same response from the IRS, we address them as one, as the district court and parties also appear to have done.

4

specific information that [Plaintiffs] seek is return information" which the IRS could not disclose to Plaintiffs without US West's authorization. Hull v. IRS, No. 09-cv-0024, 2010 WL 3034463, at *3 (D. Colo. Aug. 3, 2010) (unpublished). Without that authorization, the district court concluded Plaintiffs had filed an unperfected FOIA request. Id. at *5. And, without a perfected request, the court held Plaintiffs had not exhausted their administrative remedies and, as a result, the court lacked subject matter jurisdiction over the action to order an in camera review. Id. at *6. The district court added that even if it had subject matter jurisdiction, it would uphold the IRS's decision because Plaintiffs requested third party return information without that third party's authorization.

Plaintiffs' timely appeal followed. Exercising our appellate jurisdiction under 28 U.S.C. § 1291, we first reject the district court's conclusion that it was jurisdictionally barred from deciding the merits of Plaintiffs' FOIA claim. Nevertheless, reaching the merits, we agree the IRS properly withheld the requested information and, so, affirm the district court's judgment in favor of the IRS. Before doing either, however, we will review the law applicable to this summary judgment action.

II.

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court, drawing all reasonable inferences in favor of the nonmoving party—in this case, in favor of Plaintiffs. Trentadue v.

5

Integrity Comm., 501 F.3d 1215, 1226 (10th Cir. 2007). FOIA provides the public "a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions." Anderson v. Dep't of Health & Human Servs., 907 F.2d 936, 941 (10th Cir. 1990). FOIA places upon the government agency the burden of proving the requested information falls within one of the nine specific exemptions from disclosure. 5 U.S.C. § 552(a)(4)(B). FOIA also provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). We and our district court colleagues review the government's refusal to release requested information de novo, reading the act broadly in favor of disclosure and construing its exemptions narrowly. Anderson, 907 F.2d at 941–42.

To satisfy its burden of proof under FOIA, an agency typically submits affidavits. These:

> [A]ffidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if the information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

Quiñon v. FBI, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting Hayden v. Nat'l Sec. Agency / Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979)). If unsatisfied with the agency's affidavits or declarations, a district court, in its discretion, may

6

order the agency to produce a <u>Vaughn</u> index or to submit the requested information for an in camera review.[2]  <u>Id.</u>  <u>See</u> <u>also</u> <u>DeSalvo v. IRS</u>, 861 F.2d 1217, 1222 n.6 (10th Cir. 1988) ("The FOIA allows the district court flexibility in utilizing [an] in camera review of the disputed documents, indexing, oral testimony, detailed affidavits, or alternative procedures to determine whether a sufficient factual basis exists for evaluating the correctness of the [agency] determination in each case."). But "an *in camera* review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'" <u>Quiñon</u>, 86 F.3d at 1228.

Central to this case is FOIA's Exemption 3, which provides FOIA's disclosure requirements do:

> [N]ot apply to matters that are . . . (3) specifically exempted from disclosure by statute . . ., if that statute (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  One such statute, Internal Revenue Code (IRC or the Code) § 6103, generally prohibits the disclosure of "returns and return information" in order "to protect the taxpayer's right to privacy and confidentiality in return information, while at the same time to afford disclosure to those congressional committees and federal and state authorities which ha[ve] legitimate needs for such

---

[2] "A *Vaughn* index is a compilation prepared by the government agency . . . listing each of the withheld documents and explaining the asserted reason for its nondisclosure." <u>Anderson</u>, 907 F.2d at 940 n.3 (citing <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973)).

7

information." Grasso v. IRS, 785 F.2d 70, 75 (3d Cir. 1986). See also 26 U.S.C. § 6103(a); DeSalvo, 861 F.2d at 1221 (explaining IRC § 6103 qualifies as an exempting statute under FOIA's Exemption 3). As one court noted, while FOIA's basic aim is sunlight, Congress decided that with respect to return information, "confidentiality, not sunlight, is the proper aim." Aronson v. IRS, 973 F.2d 962, 966 (1st Cir. 1992). See also Church of Scientology of Cal. v. IRS, 792 F.2d 153, 158–59 (D.C. Cir. 1986) (en banc) ("We think similarly heightened protection was intended with regard to tax information, in order to encourage the full, voluntary self-assessment of taxes upon which our internal revenue system largely depends."), aff'd, 484 U.S. 9 (1987). The Code, however, allows the IRS to disclose return information, if the "taxpayer" or "person" whose return information is sought consents to the disclosure. 26 U.S.C. § 6103(c). Thus, if Plaintiffs seek US West's return information, they must present US West's consent.[3]

---

[3] Henceforth, we will refer to US West, Inc. and US West Pension Plan together as US West. We, of course, recognize that US West, Inc. and US West Pension Plan are two different entities, two different "taypayers" or "persons" under the IRC. The first is a corporation and the second is a tax-exempt, qualified pension plan or trust pursuant to IRC §§ 401(a) and 501(a). But as a practical matter they are obviously closely related—the corporation created and directed the operation of the pension plan for the benefit of its employees. Likely for that reason, the parties have not indicated consistently whose alleged return information—US West, Inc. or US West Pension Plan or both—Plaintiffs' FOIA request implicates and, therefore, from which entity must Plaintiffs secure a waiver.

The distinction between the two, however, has become irrelevant (if it was ever otherwise). On appeal, Plaintiffs no longer dispute Section 6103 protects the return information of US West, Inc. and US West Pension Plan alike. Before the

(continued...)

8

More specifically, IRS regulations, and thus FOIA, require requesters seeking a third party's return information to file that third party's authorization with their initial FOIA request. FOIA commands that each government "agency, upon any request for records which (i) reasonably describes such records and (ii) is *made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed*, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added). In turn, IRS regulations require that an:

> [I]nitial request for records must . . . (E) [i]n the case of a request for records the disclosure of which is limited by statute or regulations (as, for example, the Privacy Act of 1974 (5 U.S.C. § 552a) or section 6103 and the regulations thereunder), establish the identity and the right of the person making the request to the disclosure of the records in accordance with paragraph (c)(5)(iii) of this section.

---

[3](...continued)
district court they claimed Section 6103 did not protect US West Pension Plan because as a tax-exempt entity they said it was not a "taxpayer." They have clearly, and likely wisely, abandoned that argument on appeal. See 26 U.S.C. § 6103(b)(2)(A) ("'[R]eturn information' means—a taxpayer's identity . . . or any other data . . . of any person under this title . . . ."); 26 U.S.C. § 7701(a)(1) & (14) ("The term 'person' shall be construed to mean and include an individual, a trust . . . or corporation. . . . The term 'taxpayer' means any person subject to any internal revenue tax."); Landmark Legal Found. v. IRS, 267 F.3d 1132, 1135 (D.C. Cir. 2001) ("As noted, [Section 6103] specifically covers 'a taxpayer's *identity*.' [Plaintiff] does not claim that an entity's classification as tax-exempt excludes it from that category—a claim that would surely be weak in light of the statute's additional inclusion of 'data . . . furnished . . . with respect to . . . the determination of the existence, or possible existence, of [tax] liability . . . of any person.'"); Breuhaus v. IRS, 609 F.2d 80, 83 (2d Cir. 1979) (rejecting the argument that Section 6103 does not protect return information pertaining to tax-exempt organizations). Thus, whether the requested information pertains to US West, Inc., US West Pension Plan, or both matters not. The important question is whether the requested information is return information of a taxpayer or person other than Plaintiffs.

9

26 C.F.R. § 601.702(c)(4)(i)(E). Paragraph (c)(5)(iii)(C) further provides: "in the case of . . . [a] person requesting records . . . pertaining to other persons, the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate." Lest there be any confusion, the IRS regulations advise requesters "that only requests for records which fully comply with the requirements of this section can be processed in accordance with this section." 26 C.F.R. § 601.702(c)(4)(i).

III.

Before getting to the merits of this dispute, we must make a small detour, the navigation of which relies partly on the law we have just reviewed. Generally, a plaintiff must exhaust her administrative remedies under FOIA before filing suit in federal court "'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990)). Accord Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994); McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993); Scherer v. Dep't of Educ., 78 F. App'x 687, 690 (10th Cir. 2003) (unpublished). And, courts have often held that a party's failure to file a FOIA request that complies with the agency's rules and procedures for filing such a request constitutes failure to exhaust administrative remedies. See United States v. Steele (*In re* Steele), 799 F.2d 461, 466 (9th Cir. 1986) ("The complainant must request

10

specific information in accordance with published administrative procedures, and have the request improperly refused before that party can bring a court action under the FOIA." (internal citations omitted)); Strunk v. Dep't of State, 693 F. Supp. 2d 112, 114 (D.D.C. 2010) ("'An agency's disclosure obligations are not triggered . . . until it has received a proper FOIA request in compliance with its published regulations.'" (quoting Antonelli v. Fed. Bureau of Prisons, 591 F. Supp. 2d 15, 26 (D.D.C. 2008)); Roberts v. Paulson, 263 F. App'x 745, 747–48 (10th Cir. 2008) (unpublished) (deciding the plaintiff had not exhausted his administrative remedies under FOIA because he had not alleged that he had complied with the IRS's notice requirements of 26 C.F.R. § 601.702(c)(4)(i)(C)).

In the instant case, the IRS claims, and the district court agreed, because Plaintiffs requested US West's "return information" without submitting US West's authorization, Plaintiffs did not file a perfected FOIA request and, as a result, have not exhausted their administrative remedies. As the IRS implored it to do, the district court went on to hold Plaintiffs' failure to exhaust their administrative remedies under FOIA deprived it of subject matter jurisdiction over this action.

We are not entirely convinced of the first premise of the IRS's argument and the district court's holding—that failure to file US West's authorization with their initial FOIA request amounts to failure to exhaust administrative remedies. We acknowledge the IRS regulations, and thus FOIA, require Plaintiffs to submit a waiver from US West with their initial FOIA request, if they seek US West's return

11

information.  5 U.S.C. § 552(a)(3)(A); 26 C.F.R. § 601.702(c)(4)(i)(E).  But even so, if Plaintiffs contest the IRS's determination that they seek exempt third party return information, which they are allowed to do, they have no choice but to refuse to provide the consent and appeal the IRS's determination.  In turn, FOIA and IRS regulations require the IRS to notify Plaintiffs why it will not comply with their request and/or why they are not entitled to the information they seek, the reasons for that determination, and their right to appeal to the agency any adverse determination.  5 U.S.C. § 552(a)(6)(A)(i).  See also Tanoue v. IRS, 904 F. Supp. 1161, 1165 (D. Haw. 1995) (concluding the plaintiff's failure to submit a third party's consent did not constitute failure to exhaust and the IRS remained obligated to respond to the plaintiff's request); Helmon v. IRS, No. 3-00-cv-0809-M, 2000 WL 1909786, at *2 n.5 (N.D. Tex. Nov. 6, 2000) (unpublished) (explaining that a plaintiff's failure to establish her legal relationship to the taxpayer whose return information she sought goes to whether the IRS should have complied with her request, not to whether she had exhausted her administrative remedies), adopted by Helmon v. IRS, 2000 WL 33157844 (N.D. Tex. Nov. 30, 2000) (unpublished).  Contra Strunk, 693 F. Supp. 2d at 115 (deciding that a plaintiff's failure to comply with agencies' regulations that require "requests for records pertaining to another individual . . . *be accompanied by a written authorization for access by the individual* . . . or proof that the individual is deceased" constitutes failure to exhaust his administrative remedies under FOIA); Flowers v. IRS, 307 F. Supp. 2d 60, 68–69 (D.D.C. 2004) (concluding the plaintiff

12

had failed to exhaust her administrative remedies by not providing the proper authorization for the disclosure of her return information to a third party with her initial FOIA request); Church of Scientology W. U.S. v. IRS, No. CV 89-5894, 1991 U.S. Dist. Lexis 3008 at *2 (C.D. Cal. Mar. 5, 1991) (unpublished) ("A FOIA requester cannot claim wrongful withholding of documents if a third party waiver which is a prerequisite to disclosure is not presented to the agency. Until that is done, judicial review is premature.").

For their part, Plaintiffs have done all they could to challenge the IRS's adverse determination that their request seeks protected return information and to obtain a final administrative decision. They filed a FOIA request seeking records. The IRS responded, notifying Plaintiffs they were not entitled to the information they seek without US West's waiver. Plaintiffs appealed that response to the IRS's FOIA Appeals Office, seeking the same records without submitting the waiver because they contested the IRS's determination it was required. The IRS again refused to release the requested records. See Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 327–29 (D.D.C. 2002) (deciding that though FOIA, 5 U.S.C. § 552(a)(3), requires requesters to "reasonably describe" the records sought just as it requires requests to be "made in accordance with [an agency's] published rules", a requester's failure to do so did not constitute failure to exhaust his administrative remedies when he appealed the agency's response, complying with the administrative scheme and doing all that he

13

could to obtain a final administrative decision).[4] Moreover, to decide whether Plaintiffs have exhausted their administrative remedies, we would have to answer the same question we would if we proceeded to the merits: has the IRS met its burden of proving all of the requested information constitutes third party return information. See Ruotolo v. Dep't of Justice, Tax Div., 53 F.3d 4, 8 (2d Cir. 1995) ("[I]f a court is to determine that it has no jurisdiction, it must first decide the very question it would be called upon to decide if it had jurisdiction. Whether the information sought is reasonably identifiable is a question that must be resolved on plenary review, and the mere determination by an agency . . . that the material sought cannot be reasonably identified, will not serve to bar that plenary review.").

---

[4] "FOIA provides for two different types of exhaustion, actual and constructive. Actual exhaustion occurs when the agency denies all or part of a party's document request. Constructive exhaustion occurs when certain statutory requirements are not met by the agency." Taylor, 30 F.3d at 1368. The district court in Nurse concluded the plaintiff had exhausted his administrative remedies, despite failing to reasonably describe the records he sought, "because his actions fully complied with the applicable administrative scheme *and* the record [was] devoid of any response by the defendant notifying the plaintiff of his right to appeal a denial of his request." 231 F. Supp. 2d at 327 (emphasis added). When the defendant agency informed the plaintiff it needed additional information to process his FOIA request, FOIA required the agency to notify him of his right to administratively appeal the decision denying his request. Id. at 328 (citing 5 U.S.C. § 552(a)(6)(A)(i)). The defendant agency's "failure to notify plaintiff at that time of his right to appeal that decision also amounts to constructive exhaustion because the defendant had an obligation to inform the plaintiff of his right to appeal the adverse decision." Id. We note in this case, the IRS similarly did not inform Plaintiffs of their right to administratively appeal its determination that they sought third party return information to which they are not entitled without that third party's consent. Appx. at 114.

14

But assuming failure to file US West's waiver could constitute a failure to exhaust administrative remedies under FOIA, we seize this opportunity for clarity by joining the majority of our sister circuits in concluding exhaustion under FOIA is a prudential consideration rather than a jurisdictional prerequisite.[5] Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) ("[T]he exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so."); Taylor, 30 F.3d at 1365 n.3 ("[E]xhaustion of administrative remedies is not a jurisdictional requirement."); McDonnell, 4 F.3d at 1240 n.9 ("A failure to exhaust administrative remedies does not *per se* deprive the court of subject matter jurisdiction. It is a prudential consideration that the court takes into account in determining whether to exercise subject matter jurisdiction."); Matter of Lawrence, 4 F.3d 996 (table), 1993

---

[5] In the past, we admit we have been less than clear on this point. In an unpublished decision, we stated that a "district court lacked subject matter jurisdiction over [an] action where plaintiff has failed to exhaust her administrative remedies." Trenerry v. IRS, 78 F.3d 598 (table), 1996 WL 88459 at *1 (10th Cir. 1996) (unpublished). In another unpublished decision of more recent vintage, relying on Oglesby, 920 F.2d at 61 (noting failure to exhaust does not automatically bar judicial review under FOIA), we stated a "district court properly dismissed the complaint [pursuant to Fed. R. Civ. P. 12(b)(6)] based on [the plaintiff]'s failure to exhaust his administrative remedies." Scherer, 78 F. App'x. at 690. See also Roberts, 263 F. App'x at 747–48 (deciding the district court properly dismissed the plaintiff's FOIA claim because he had failed to demonstrate he had exhausted his remedies, citing Taylor, 30 F.3d at 1367 (noting exhaustion is not a jurisdictional prerequisite under FOIA)). Courts generally dismiss suits on prudential grounds pursuant to Rule 12(b)(6) for failure to state a claim rather than Rule 12(b)(1) for lack of subject matter jurisdiction. Taylor, 30 F.3d at 1367 n.3. "'Jurisdiction . . . is a word of many, too many, meanings.'" Kontrick v. Ryan, 540 U.S. 443, 454 (2004) (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 90 (1998)). We suspect we previously used the word less than precisely.

15

WL 360952 at *2 n.3 (7th Cir. 1993) (unpublished) ("Exhaustion, however, is not jurisdictional in FOIA cases, so we reach the merits now rather than requiring exhaustion which would ultimately be futile."). But see Steele, 799 F.2d at 466 ("Where no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine."); Reisman v. Bullard, 14 F. App'x 377, 379 (6th Cir. 2001) (unpublished) ("We also agree with the district court that the Reismans' failure to exhaust administratively . . . their document requests under the FOIA deprived the district court of jurisdiction." (citing Steele, 799 F.2d at 465–66)).[6] "The Supreme Court has distinguished between exhaustion requirements that are 'statutorily specified jurisdictional prerequisite[s]' and those that are judicially imposed and reflect prudential concerns." I.A.M. Nat. Pension Fund Ben. Plan C. v. Stockton Tri Indus., 727 F.2d 1204, 1208 (D.C. Cir. 1984) (quoting Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). "Only when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision . . . has the Supreme Court held that exhaustion is a jurisdictional prerequisite." Id. FOIA, the relevant

---

[6] The Steele court then goes on to discuss whether the plaintiffs were entitled to the benefit of the "futility exception" of the exhaustion doctrine and whether the purposes underlying the exhaustion doctrine were achieved. Doing so suggests the exhaustion doctrine is closer to a prudential consideration than a jurisdictional requirement. 799 F.2d at 466. Nonetheless, Steele held the plaintiffs' failure to exhaust their administrative remedies deprived the district court of subject matter jurisdiction. Id.

16

statute in this case, "does not unequivocally make" the exhaustion requirement jurisdictional. Hidalgo, 344 F.3d at 1258. See also Hedley v. United States, 594 F.2d 1043, 1044 (5th Cir. 1979) (explaining that FOIA does "not expressly require that a claimant exhaust his administrative remedies prior to requesting judicial relief").

Our conclusion does not alter the fact that exhaustion remains a hurdle that FOIA plaintiffs must generally clear in order to obtain relief through the courts. It is just not a jurisdictional hurdle. Therefore, as a prudential doctrine, Plaintiffs' alleged "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." Hidalgo, 344 F.3d at 1258–59 (quoting Oglesby, 920 F.2d at 61). While it is well accepted that "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review[,]" the purposes of exhaustion do not support barring judicial review in this case. Id. Those purposes—"namely, preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [or] compil[ing] a record which is adequate for judicial review," id. (internal quotations omitted)—have all been served because Plaintiffs "did not bypass the administrative review process but pursued it to its end . . . ." Wilbur, 355 F.3d at 677. Plaintiffs then availed themselves of the right to seek judicial review, as the IRS told them they could. Appx. at 119 ("The FOIA requires us to advise you of the judicial remedies granted in the Act. You may file a

17

complaint in the United States District Court . . . .").  See also Wilbur, 355 F.3d at 677 ("Wilbur then availed himself of the right to seek judicial review as the CIA told him he could.").

Even the IRS confirms, though perhaps unintentionally, the purposes of exhaustion have been served.  According to the IRS, it has compiled a sufficient record upon which we can definitively conclude all the information Plaintiffs have requested is US West's return information, which is why it maintains Plaintiffs must submit US West's waiver to perfect their request.  The IRS also asserts it has given the courts and Plaintiffs all the benefit of its experience and expertise and provided as much of a record as it intends to give:  "[E]ven if the IRS had treated the FOIA requests as perfected, and had searched for and located documents, the requested material properly would have been withheld for the reasons" it has already given. Aple. Br. at 34 n.12 (internal citations omitted).  Because exhaustion is a prudential consideration and the purposes of exhaustion have been served, we conclude the district court should have decided Plaintiffs' FOIA claim on the merits.

IV.

We now turn to the heart of the matter: whether the IRS has proved all of the information Plaintiffs requested constitutes US West's return information.  The Code expansively defines return information as:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or

18

tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A). "[R]emoval of identification from return information [does] not deprive it of protection under § 6103(b). Since such deletion would not make otherwise protected return information discloseable, [the IRS] has no duty under the FOIA to undertake such redaction." Church of Scientology of Cal. v. IRS, 484 U.S. 9, 17 (1987).

Plaintiffs' FOIA request sought US West's March 1996 submission to the IRS under the VCRP, "including supporting documents, supplemental reports, informal and formal discovery requests, orders, if any, and the written and electronic (e-mail) responses given thereto, including the August 28, 1996 dated IRS's Compliance Statement issued to U S WEST." Appx. at 238. The IRS argues all of that information constitutes return information because all information US West submitted to and received from the IRS under the VCRP pertains to US West's "deductions," possible tax liability, and the pension plan's qualification as a tax-exempt entity. That contention relies upon the nature of the VCRP and the Code's treatment of pension plans and corporations' contributions to them, which we now briefly review.

19

## A.

As one of the IRS's declarations explained, the IRS established the VCRP in 1992 to allow sponsors of qualified pension plans to identify and to correct voluntarily operational failures of the plans with the guidance of the IRS, while also allowing the sponsors and plans to continue providing participants with retirement benefits on a tax-favored basis. Rev. Proc. 94-62, 1994-39 I.R.B. 11 (Sept. 8, 1994) (attached to IRS declaration at Appx. 183), modified and superseded by Rev. Proc. 96-29, 1996-16 I.R.B. 24 (Apr. 3, 1996) (modifying the eligibility requirements for participation in the VCRP). The IRS revised the VCRP extensively in 2001. But for our purposes, it suffices to note from its beginning in 1992 through 1996, the period relevant to this dispute, the VCRP provided that upon review of the identified defects and suggested corrections, the IRS issues a "compliance statement describing the terms of full correction." Id. If the IRS issues a "compliance statement, and the plan sponsor timely implements the stated corrections and procedures, information given by the plan sponsor to the [IRS] under the VCR program will not be used as the basis of an Employee Plans examination" *i.e.*, an audit of the pension plan. Id. But if "agreement cannot be reached on correction or administrative procedures, the case may be referred" to an Employee Plans examination office for further examination. Id. Similarly, if the IRS "determines that the plan sponsor did not implement the corrections and procedures [outlined in the compliance statement] within the stated time period," the information provided may be considered in an examination. Id.

20

Regardless of whether the IRS issues a compliance statement, "excise taxes and additional taxes, to the extent applicable, are not waived merely because the underlying defect has been corrected or because the taxes result from the correction of defects under the VCR program." Id.

Aside from the VCRP, the IRS tells us, as it did the district court, that the Code provides a corporation's contributions to a qualified pension plan are deductible to a defined extent. See 26 U.S.C. § 404. A pension plan may be disqualified for failing to operate in accordance with the pension plan's terms or Section 401(a). See BNA Tax Mgmt., U.S. Income Portfolios, Comp. Planning 375-2d, § I. If a plan is disqualified, the corporations' contributions to the plan may become taxable. See id. Moreover, disqualification of a pension plan would result in the plan losing its tax-exempt status. See 26 U.S.C. §§ 401(a) & 501(a). For some violations of a pension plan's terms, instead of disqualifying the plan, the Code provides the corporation may be subject to an excise tax. See, e.g., 26 U.S.C. §§ 4971–4980.

Therefore, because the information US West may have provided to and received from the IRS under the VCRP dealt with the pension plan's failure to comply with the plan's terms, the IRS maintains all of that information pertains to the "nature . . . of [US West's] deductions" and constitutes "data, received by, . . . prepared by, [or] furnished to . . . the Secretary . . . with respect to the determination of the existence, or possible existence, of liability" of US West for a

21

"tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A). Likewise, the IRS asserts any compliance statement it may have issued to US West was "other data . . . prepared by . . . the Secretary," and other related records were "other data . . . collected by the Secretary . . . with respect to . . . the possible existence, of [US West's] liability." Id. Consistent with this interpretation of Section 6103(b)(2)(A), the IRS provided in Revenue Procedure 94-62 that "[b]ecause the VCR program is a compliance program, relating directly to the enforcement of operational qualification requirements [of pension plans], the information received or generated by the [IRS] under the program is subject to the confidentiality requirements of § 6103 of the Code . . . ." Rev. Proc. 94-62 (in effect at the time of US West's alleged submission to the VCRP).[7] The district court agreed with the IRS, holding "[b]ecause information submitted under a VCR program *could* implicate tax liability, the specific information [Plaintiffs] seek[] is return information and protected from disclosure under 26 U.S.C. § 6103." Hull, 2010 WL 3034463 at *3. The IRS has set forth a specific and logical explanation as to why FOIA's Exemption 3 and Section 6103 exempt all of the requested information from disclosure, which we ultimately find persuasive despite Plaintiffs' arguments.

---

[7] The IRS does not suggest we owe Rev. Proc. 94-62 any level of deference. Instead, the IRS simply contends Rev. Proc. 94-62 is consistent with its present litigation position and created an expectation on the part of pension plans and their sponsors that information they provided and received pursuant to the VCRP would have the confidentiality protections of Section 6103.

B.

In response, Plaintiffs make essentially four arguments. They claim that (1) they seek information about the operation of a pension plan rather than return information; (2) no evidence exists that the requested information was received, collected, or prepared by the IRS with respect to an actual tax return, liability, or deduction; (3) the IRS has not met its burden of proving all requested information is return information because it has only provided conclusory assertions as to the information's content without actually reviewing the information; and (4) all of the requested information does not fall within the meaning of "data." We take each contention in turn. Because in the end we reject each of those arguments, we must also reject Plaintiffs' claims that the IRS has improperly withheld segregable, nonexempt portions of the requested information and that the district court erred in refusing to conduct an in camera review.

1.

First and foremost, Plaintiffs assert they seek information about the operation and administration of US West's pension plan, rather than return information. They, however, do not provide any explanation as to why the fact that the requested information pertains to the operation and administration of the pension plan means that the requested information does not also pertain to potential tax liability, the deductibility of plan contributions, or the plan's tax-exempt status. Plaintiffs do not dispute that the VCRP identifies and corrects violations of a pension plan's terms.

23

Nor do they dispute that, as a matter of law, a pension plan may be disqualified for failing to operate in accordance with its terms and, thereby, may lose its tax-exempt status; disqualification may render a corporation's contributions taxable; and, for some violations of a pension plan's terms, the Code provides the corporation may be subject to an excise tax. How US West administered and operated the pension plan establishes whether the plan has been operating in compliance with the plan's terms or the compliance statement, which, in turn, could affect US West's tax liability, tax-exempt status, or the deductibility of contributions. By claiming they seek information regarding the operation and administration of US West's pension plan, rather than demonstrating they do not seek US West's return information, Plaintiffs confirm that they do. In any case, no matter what Plaintiffs call the information they requested—"information pertaining to the operation and administration of the pension plan" or otherwise—it does not alter the fact that they sought "the full March 15, 1996 dated submission made [to the VCRP] by U S WEST and pension plan administrators, including supporting documents, supplemental reports, informal and formal discovery requests, orders, if any, and the written and electronic (e-mail) responses given thereto, including the August 28, 1996 dated IRS's Compliance Statement issued to U S WEST," all of which, as the IRS has so far made clear, constitutes return information as defined by Section 6103(b)(2)(A). Appx. at 238.

2.

Next, Plaintiffs contend the IRS has presented no evidence that the requested

24

information was received, collected, or prepared by the IRS with respect to an actual tax return, liability, or deduction. They even go so far as to maintain US West never actually took a deduction for any payments into the plan, filed a return associated with the plan, or was assessed a liability for contributions to the plan. The IRS takes no position as to those factual assertions. But even if those factual assertions about US West's returns, deductions, and liabilities are correct, Plaintiffs' argument on this point overlooks the fact that the Code defines return information broadly, reaching far more than just information that relates to an actual tax return, an imposed liability, or a taken deduction. Section 6103(b)(2)(A) protects "data received by . . . prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or *possible existence, of liability* . . . for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." (emphasis added).

> In many cases we know little more than that the communications arrived at the IRS, with no indication that it used them in any way or subjected them to anything more than minimal processing. But § 6103 seems deliberately sweeping in this respect, reaching data "received by, recorded by, prepared by, furnished to, or collected by" the Secretary. It appears to take no interest in the Secretary's actual *use* of the material. To reach [the plaintiff's] reading we would have to excise the words "received by" and "furnished to," and to disregard the extremely general character of the connecting phrase—"with respect to."

Landmark, 267 F.3d at 1136. The statutory definition "plainly reaches far beyond" information that "relates to an actual tax return." Id. at 1138. As noted above, Plaintiffs dispute neither the possible legal consequences for a pension plan's failure

25

to operate in accordance with its own terms nor that the VCRP corrects self-identified violations of a pension plan's terms. Thus, US West may not have submitted information about its pension plan to the VCRP "with respect to a return" in the most literal sense of that phrase. Nonetheless, US West did submit information about its pension plan "with respect to . . . the *possible* existence of liability." 26 U.S.C. § 6103(b)(2)(A) (emphasis added). Cf. Landmark Legal Found. v. IRS, 87 F. Supp. 2d 21, 26 (D.D.C. 2000), aff'd, 267 F.3d 1132 (D.C. Cir. 2001) (concluding "that all information communicated to, from, and within the IRS regarding the actual or potential tax liabilities, audits, or tax-exempt status of a particular organization falls under the broad definition of 'return information' in § 6103."). We, consequently, need not determine whether the IRS actually used the information US West provided or that it prepared under the VCRP with regard to an existing return or to calculate an imposed deduction or liability in order to conclude that information is return information.

3.

Gaining slightly more traction, Plaintiffs assert the IRS has not carried its burden of proving all of the requested information constitutes return information because the IRS supplies only conclusory assertions as to the information's content based upon declarations of individuals who admittedly have not looked at the requested information. So, Plaintiffs ask, how could the IRS possibly know that every single document in the requested information constitutes return information?

26

To this, the IRS responds it can tell just by reading Plaintiffs' FOIA request that every document responsive to their request constitutes return information. Plaintiffs stated in their FOIA request they wanted all documents associated with US West's submission to the VCRP in 1996. Therefore, according to the IRS, all of the documents Plaintiffs seek are US West's return information which they are not entitled to receive without US West's permission. For the reasons we provide, we agree. The IRS further admits it has neither searched for nor reviewed the requested information. It has not done so because Plaintiffs sought only US West's return information and IRS regulations required Plaintiffs to submit US West's consent with their initial request to receive that information. See 26 C.F.R. § 601.702(c)(4)(i)(E), (c)(5)(iii)(C) (requiring a FOIA request seeking a third party's return information to supply that third party's authorization with the request). Not only would it have violated its own regulations to have begun processing Plaintiffs' request without that consent, the IRS had no duty under FOIA to process Plaintiffs' request until they provided that consent because "only a valid FOIA request can trigger an agency's FOIA obligations." Flowers, 307 F. Supp. 2d at 67 (citing Dale v. IRS, 238 F. Supp. 2d 99, 103 (D.D.C. 2002)). See 5 U.S.C. § 552(a)(3) (providing an agency must respond to a request "which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed"); cf. Truitt v. Dep't of State, 897 F.2d 540, 544 (D.C. Cir. 1990) ("To be sure, a request which fails to 'reasonably describe[ ]' the

27

documents sought does not trigger a search of agency records."). As a result, the IRS did not begin to process Plaintiffs' request, by searching for and reviewing the requested information. Having never searched for potentially responsive records, the IRS neither confirms nor denies their existence. Instead, it assumes the truth of Plaintiffs' allegation that US West had made a submission under the VCRP to the IRS.

But, when pushed at oral argument as to why it could not just look at the documents anyway before denying Plaintiffs' request, the IRS explained if it had done so and then informed Plaintiffs that US West had made a submission to and received a compliance statement under the VCRP but it could not disclose the associated records because they are return information, that in and of itself would constitute an impermissible disclosure of return information. Presumably, because doing so would disclose the fact that US West had made submissions to the IRS under the VCRP, a fact that is allegedly protected from disclosure as either a "taxpayer's identity" or "data received . . . by the Secretary . . . with respect to the determination of the existence, or possible existence, of liability . . . for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A).[8]

---

[8] The dissent takes issue with our discussion of this argument because the IRS raised it for the first time on appeal. True enough. We discuss it, nonetheless, because the IRS made it in response to the panel's pressing the IRS for an

(continued...)

First, Section 6103(b)(2)(A) specifically protects from disclosure a "taxpayer's identity." Id. Second, it also protects "data . . . with respect to the determination of the . . . possible existence, of liability . . . of any person . . . ." Id. The Code does not define "data." Nonetheless, in Landmark Legal Foundation v. IRS, 267 F.3d 1132, 1136 (D.C. Cir. 2001), the District of Columbia Court of Appeals concluded Section 6103's "data" covers not only the identities of tax-exempt organizations but also the identities of third parties who had requested audits of those tax-exempt organizations because "a statement of a 'taxpayer's identity' communicates the factual proposition that someone's name is in the IRS files in connection with that person's payment or non-payment of taxes. Similarly, revelation of any third-party complainer 'identity' expresses the factual proposition that the person identified has communicated with the IRS about the status of a taxpayer or potential taxpayer." We conclude Section 6103 no less protects the identity of a taxpayer seeking to protect its own tax-exempt status or a taxpayer seeking to protect the deductibility of its own contributions to a pension plan by filing a submission with the IRS under the VCRP.[9]

---

[8](...continued)
explanation as to why it could not have looked at the requested records anyway, essentially, despite Plaintiffs' improper request. And, despite the dissent's suggestion, there is a meaningful distinction between what the IRS has done and what it proposes the IRS should have done. By refusing to search for and confirm the existence of the requested records, the IRS has avoided saying whether US West made submissions to the IRS under the VCRP—a fact protected from disclosure for reasons explained herein.

[9] We do not mean to imply that if Plaintiffs had sought any and all information
(continued...)

Furthermore, on the facts of this case, we cannot think of any way the IRS could establish the requested information is third party return information other than explaining what it already has, even if it had reviewed the requested information. Providing any more details about the specific contents of the "submission made by U S West and pension plan administrators, including supporting documents, supplemental reports, informal and formal discovery requests, orders, if any, and the written and electronic (e-mail) responses given thereto, including the . . . Compliance Statement" would surely compromise the confidentiality required by Section 6103.

---

[9](...continued)
regarding US West in the IRS's possession that Section 6103 necessarily prevents the IRS from searching for responsive records because doing would reveal US West's "identity." It seems not all information about a taxpayer or person in IRS files is necessarily return information. Church of Scientology of Cal. v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986), aff'd 484 U.S. 9 (1987). As Landmark noted, Section 6103(b)(2)(A) is arguably ambiguous. The section:

> [S]tarts with a long list of specific items . . . [namely] 'a taxpayer's identity'[], and then refers to 'other data,' followed by a modifying clause—'received by . . . the Secretary with respect to a return or with respect to the determination of the existence, or possible existence of liability . . . .' The modifying clause may apply to *all* the preceding items, or only to 'other data.' Under the latter reading, Congress would be understood to have thought that the specifically identified information [identities of tax-exempt organizations], if in the hands of the IRS at all, should be categorically sheltered from disclosure.

267 F.3d at 1135 (quoting 26 U.S.C. § 6103(b)(2)(A)). But because Plaintiffs in this case specifically seek the information US West submitted to and received from the IRS under the VCRP, which we have explained constitutes "any other data, received by . . . prepared by, . . . or collected by the Secretary with respect to the determination of the . . . possible existence[] of liability," § 6103(b)(2)(A), we need not resolve today "whether taxpayer identities would not be covered if for some reason they did not satisfy the modifying clause." Landmark, 267 F.3d at 1135.

The only other alternative is for the IRS to relay that each of those kinds of documents exist (submission, supplemental report, discovery request, written responses, and a compliance statement) but state that each are "data" relating to US West's potential tax liability or pertain to "the nature, source, or amount of [its] . . . deductions." 26 U.S.C. § 6103(b)(2)(A). Doing so would not enable Plaintiffs to challenge the IRS's withholding the documents in any greater depth. See Church of Scientology of Tex. v. IRS, 816 F. Supp. 1138, 1150 (W.D. Tex. 1993) (noting the impossibility and futility of requiring the IRS to provide any further explanation of why some of the requested information is third party return information because "[p]roviding details to establish a record is 'third party return information' would compromise the confidentiality required by § 6103(a)" and "would not enable the [requester] to challenge the withholding in any greater depth.").

In addition to not reviewing the requested information, Plaintiffs urge us that the IRS has only provided the same sort of conclusory, unspecific assertions as to the requested information's content as the Fifth Circuit deemed insufficient in Batton v. Evers, 598 F.3d 169 (5th Cir. 2010). We find the explanations the IRS has provided in litigation in this case markedly different from those it provided in Batton. The plaintiff in Batton sought all information and documents relating to the IRS's audit of him. 598 F.3d at 173. As to some of the documents it withheld, the IRS claimed they were "'certain Examination Workpapers consisting of case history notes and information from private sources [that] contain return information for persons other

31

than plaintiff [that] are exempt from disclosure to plaintiff under" FOIA's third exemption and IRC § 6103(a). Id. at 177. That was the sum total of the explanation the IRS provided of the purported third party return information and, thus, the Fifth Circuit concluded "it is impossible to tell from the . . . declaration and the rest of the summary judgment record what information is contained within the 'case history notes and information from private sources' and whether, in whole or in part, the documents contain third party taxpayer information." Id. at 177–78. The court explained:

> [T]he district court did not make any factual descriptions of the documents in this case or conduct an in camera review. *Nor does it logically follow that case history notes and information from private sources contain exclusively third party tax information, rather than segregable portions. We recognize that in many instances an agency may submit an affidavit or declaration categorically describing the types of documents and the applicable exemptions to justify its withholding.* But where the agency affidavit fails to identify the particular type of the document being withheld—and the party seeking disclosure contests the type of information it contains—a district court may not simply rely on a broad categorical approach to withholding. . . . The general description of "case history notes and information from private parties" does not tell us anything about the individual documents and why more general information—for example, the dates, authors, or brief description of the subject matter of the notes and information—cannot be disclosed.

Id. at 178 (emphasis added). While it does not logically follow that "case history notes and information from private parties" are return information, the IRS has demonstrated it does logically follow that information a pension plan and its sponsor submit to and receive from the IRS pursuant to the VCRP constitutes return

32

information.  Cf. Landmark, 87 F. Supp. 2d at 26 (concluding "that all information communicated to, from, and within the IRS regarding the actual or potential tax liabilities, audits, or tax-exempt status of a particular organization falls under the broad definition of 'return information' in § 6103.").  By virtue of what Plaintiffs purport to seek in their request, we, as well as the IRS, know the general information lacking in Batton: the dates—March through August 1996; the authors—US West and the IRS; brief description—the operational failures US West identified and the correction methods upon which the IRS and US West agreed.  We, therefore, know why the rest of the information cannot be disclosed.  Plaintiffs do contest the type of information the withheld documents contain by claiming it pertains to the operation of the pension plan and that it was not received, collected, or prepared by the IRS with respect to a return, liability or deduction.  But we have already explained why those claims do not meritoriously call into question the IRS's assertion that the requested information is return information.

And, Batton acknowledged "in many instances an agency may submit an affidavit or declaration categorically describing the types of documents and the applicable exemptions to justify its withholding."  598 F.3d at 178.  The IRS has demonstrated this is one of those instances because when:

> [A] claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a Vaughn index is futile. . . .  If, therefore, the Commissioner's assertion of a Section 6103 exemption rests upon such generic grounds, he will ordinarily be able to make the

33

requisite showing with an affidavit sufficiently detailed to establish that the document or group of documents in question actually falls into the exempted category. Some portions of § 6103 are plainly susceptible of such generic application—particularly that portion which defines protected return information to include all information, no matter what its subject, "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person . . . for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense."

Church of Scientology of Cal. v. IRS, 792 F.2d at 152 (quoting 26 U.S.C. § 6103(b)(2)(A)). The IRS has provided a logical and specific explanation of why all of what Plaintiffs seek in their FOIA request—US West's alleged submissions to and communication from the IRS as part of the VCRP—falls into the category of "all information, no matter what its subject, 'received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the . . . possible existence, of liability . . . of any person . . . for any tax." Id. (quoting 26 U.S.C. § 6103(b)(2)(A)).

Plaintiffs additionally claim Kamman v. IRS, 56 F.3d 46 (9th Cir. 1995), should convince us the IRS's explanation and refusal to review the requested information demonstrate it has not satisfied its burden under FOIA. But, again, the IRS's explanation in this litigation is quite different from the disapproved explanation it provided in Kamman. The plaintiff in Kamman filed a FOIA request with the IRS seeking the appraisals of Indian jewelry sold at auction in 1991. Evidently, as part of a collection action against a taxpayer not a party to the FOIA

request and lawsuit, the IRS seized Indian jewelry in 1986, had it appraised, and then sold it at auction in 1991. 56 F.3d at 47. The IRS refused to disclose the appraisals, claiming they were exempt third party return information. Id. at 48. In support of its claim, the IRS submitted the affidavits of two IRS employees. The Ninth Circuit concluded "[t]hese affidavits are not sufficient to meet the government's burden of proving that the appraisals fall within Exemption 3 of the FOIA." Id. at 49. The first affidavit revealed the affiant "did not even review the actual documents at issue. [She] merely states that the documents are in a file that is marked with the name of a taxpayer other than [the plaintiff]. This is not the 'reasonably detailed description[] of the documents' that is necessary to sustain the government's burden." Id. (quoting Lewis v. IRS, 823 F.2d 375, 378 (9th Cir. 1987)). Plaintiffs make much of that statement, pointing to the IRS's refusal to review the requested information in this case. Plaintiffs overlook the fact that the first affiant in Kamman was only able to state that "the cover of the file that contains the requested documents. . . . is labelled [sic] with the name of a taxpayer other than [the plaintiff]." Id. at 48. As we have explained, the IRS in this litigation has provided a much fuller explanation as to why the requested information is return information than "the file has another name on it," even without looking at the information. The IRS has also explained why it cannot provide any further explanation without violating Section 6103.

The Kamman court decided the second affiant, although he had at least looked

35

at the requested information, also failed to establish the appraisals fell within the definition of return information because his affidavit did not:

> [A]ssert any facts indicating that the appraisals were furnished to the IRS "with respect to a return." Nor are there any facts indicating that the appraisals were furnished to the IRS "with respect to the determination of the existence . . . of liability." Rather, the appraisals apparently were performed long after the property was seized by the IRS and after the third-party taxpayer had pleaded guilty to tax fraud charges. Thus, the taxpayer's liability (or amount thereof) had already been determined. The appraisals were presumably commissioned in order to assist the IRS in determining what a fair price for the Indian jewelry might be at the auction—an action unrelated to the taxpayer's return or liability. The IRS, at least, has failed to allege any facts that would lead us to believe otherwise.

Id. at 49. Again, this presents a very different situation than the one before us. In Kamman, the IRS provided no facts to suggest it had collected or prepared the requested information with regard to potential liability because it had in fact prepared the requested information long after it had calculated the third party taxpayer's liability. Whereas, in this case, the IRS has demonstrated that if it received, collected, or prepared the requested information, it did so while possible tax liability based upon that information still loomed over US West. We know this not based upon "assumptions about the purposes or nature" id., of the information received, collected, or prepared by the IRS under the VCRP, but based upon the long-standing and uncontroverted possible tax consequences of submitting information to the IRS under the VCRP.

36

4.

Lastly, relying primarily on Tax Analysts v. IRS, 117 F.3d 607 (D.C. Cir. 1997), Plaintiffs argue the IRS has improperly labeled all of the requested information Section 6103 "data." Tax Analysts held that the legal analyses in Field Service Advice Memoranda (FSAs) are not return information. 117 F.3d at 616. Plaintiffs claim "[l]ikewise, in this case the requested pension plan information and the resulting compliance statement directing payment to retirees is not return information." Aplt. Op. Br. at 29. But we are at a loss to see the "likewise" and Plaintiffs fail to explain the similarity. FSAs are quite different from materials submitted to and produced by the IRS under the VCRP. IRS field personnel request an FSA for legal guidance, usually with reference to the situation of a specific taxpayer. Tax Analysts, 117 F.3d at 616. It is a "means by which the national office of the Office of Chief Counsel provides field offices with advice about the tax laws in response to questions regarding specific factual situations." Id. But, FSAs are not disclosed to taxpayers and taxpayer participation in the FSA process is left to the discretion of field personnel. Id. Also, one of the primary factors Tax Analysts relied upon in concluding the legal analyses in FSAs were not return information was that legal analyses in FSAs are not "taxpayer-specific." Id. at 614. In considering Tax Analysts's meaning and deciding that the contents of communications between third parties who requested audits or investigations of tax-exempt organizations and the IRS were return information, the Landmark court explained "[c]ertainly the

37

taxpayer-specific character of the entirety of these communications points under <u>Tax Analysts</u> toward their classification as 'data.'" <u>Landmark</u>, 267 F.3d at 1138.

In contrast, all of the materials describing a pension plan's operational failures and proposed corrections submitted by a taxpayer or person to the IRS under the VCRP are inherently taxpayer-specific. A compliance statement and other materials provided by the IRS to the taxpayer are issued by an IRS examiner following a review of the taxpayer's submissions and collaboration with the taxpayer on how to correct the failures identified by the taxpayer. The IRS designed the VCRP to provide guidance not to the IRS, but to specific taxpayers at taxpayers' requests in collaboration with those taxpayers.

In addition, in <u>Tax Analysts</u> the plaintiff requested a kind of document, all FSAs, the release of which does not inherently implicate a particular taxpayer. But Plaintiffs' FOIA request in this case explicitly seeks information pertaining to a specific taxpayer or person. Thus, any information the IRS releases, Plaintiffs would know pertains to US West. We, therefore, conclude the taxpayer-specific character of the entirety of the alleged communications between US West and the IRS under the VCRP point toward their classification as data under Section 6103.

V.

We caution that the IRS's approach in this case is only acceptable under FOIA because it has demonstrated Plaintiffs' FOIA request on its face solely seeks US West's return information. FOIA only imposes a duty to search for records in

38

response to a request for records that complies with an agency's published rules and procedures for filing a proper FOIA request. 5 U.S.C. § 552(a)(3)(A) & (C). IRS regulations provide that an initial request for records seeking a third party's return information must provide that third party's authorization. 26 C.F.R. § 601.702(c)(4)(i)(E) & (c)(5)(iii)(C).[10] And, FOIA's Exemption 3 in tandem with

---

[10] The dissent claims "general FOIA principles" require the IRS to search for records responsive to Plaintiffs' FOIA request. While we agree that generally an agency has a duty to search for records responsive to a FOIA request prior to claiming they are exempt, another general FOIA principle dictates an agency only has a duty to search for responsive records upon receipt of a request that complies with the agency's rules and procedures for such requests. 5 U.S.C. § 552(a)(3)(A). The dissent says nothing to the contrary. The case it primarily cites in support of its proffered general principle, Elliott v. U.S. Dep't of Agriculture, 596 F.3d 842 (D.C. Cir. 2010), did not address an agency's FOIA obligations in light of an improper request.

In this case, IRS regulations require FOIA requests that seek third party return information, as defined by 26 U.S.C. § 6103(b)(2)(A), provide that third party's consent. It so happens that FOIA's Exemption 3 in tandem with 26 U.S.C. § 6103(a) also exempts from disclosure third party return information in the absence of that third party's consent. We are aware of, and not particularly enamored with, the circularity inherent in making a condition for a proper request for records dependent upon the records' subject matter. But, Plaintiffs have not argued, let alone demonstrated, the IRS cannot do that. Other courts have allowed agencies to do so. For example, in Strunk v. Department of State, 693 F. Supp. 2d 112 (D.D.C. 2010), the plaintiff submitted a FOIA request to the State Department and the Department of Homeland Security (DHS) for information pertaining to President Obama. State Department and DHS regulations both require that a request for records pertaining to another individual be accompanied by a written authorization for access by the individual or proof that the individual is deceased. 693 F. Supp. 2d at 115. The plaintiff admitted he had not provided President Obama's permission. The court explained "[a]n agency's disclosure obligations are not triggered . . . until it has received a proper FOIA request in compliance with its published regulations." Id. at 114. As a result, the court did not go on to inquire whether the agency had searched for responsive records, nor did it delve any further into the content or

(continued...)

39

IRC § 6103 generally exempt from disclosure third party return information in the

absence of that third party's authorization.[11]  Because Plaintiffs' FOIA request seeks

---

[10](...continued)
exempt-status of the requested information.  The plaintiff had not complied with the agencies' rules for FOIA requests and, therefore, FOIA required nothing more of the agencies than to deny the plaintiff's request and explain why they did so.  Id. at 115.  Similarly, in the case before us, the regulation the IRS accuses Plaintiffs of not complying with provides that if they request a third party's return information, they must provide that third party's permission.

[11] Taking the dissent's conclusion to its logical end would mean when Joe Smith asks for Jane Doe's return information without providing her consent, the IRS must look for her return information, confirm it exists, but then refuse to release it because it is exempt from disclosure.  One, that runs into the problem of forcing the IRS to disclose exempt return information, see our discussion in Section IV.B.3.  And, two, it is pointlessly inefficient.  The agency still bears the burden of proving the information a request seeks is exempt.  But sometimes, as other courts have also recognized, proving that does not require looking at the requested information.  Sometimes that determination can be made by considering the request and the IRS's explanations.  And, a requester retains the ability to challenge those explanations in federal court.  For example, in Bickel & Brewer v. IRS, No. 3-08-cv-0114, 2008 U.S. Dist. LEXIS 94147 (N.D. Tex. 2008), the plaintiff sought to compel the IRS to disclose documents pertaining to a tax opinion requested by an anonymous client without that client's authorization.  As a result, the court explained "[o]n its face, the FOIA request seeks documents generated or collected by the IRS in response to an inquiry regarding the client's potential tax liability" and "[t]hus, any documents responsive to the request cannot be disclosed to plaintiff without a written authorization signed by the client."  Id. at *10.  The plaintiff argued that the IRS must submit affidavits, a Vaughn index, or the documents themselves to establish that the FOIA request covers confidential return information.  The district court rejected that argument because "[s]uch measures are futile where, as here, 'the FOIA exemption consists of a generic exclusion . . ., dependent upon the category of records rather than the subject matter which each individual record contains.'"  Id. at *12 (quoting In re Dep't of Justice, 999 F.2d 1302, 1309 (8th Cir. 1993) (en banc) (quoting Church of Scientology of Cal., 792 F.2d at 152)).  For other instances where courts have decided a FOIA request sought return information solely on the basis of the request and, therefore, the IRS was justified in refusing to comply with the request, see DeSalvo, 861 F.2d at 1222; Flowers, 307 F. Supp. 2d at 68–69; Fonzone
(continued...)

40

only US West's return information and Plaintiffs have not submitted US West's consent, the IRS has fulfilled its obligations under FOIA and IRS regulations and properly withheld the requested information.

In many cases, however, the IRS may and must review the requested information before refusing to produce requested information as exempt third party return information. For instance, in <u>Batton</u>, the requester targeted information pertaining to the IRS's audit of himself. It so happened that upon processing his request, the IRS discovered responsive information that was also third party return information. Likewise, in <u>Church of Scientology of Texas v. IRS</u>, 816 F. Supp. 1138 (W.D. Tex. 1993), the Church of Scientology of Texas sought all records or information pertaining to itself in the IRS's possession. Only upon reviewing those records did the IRS discover, and then refuse to disclose, third party return information. The FOIA requests in those cases did not appear to seek third party return information and, thus, IRS regulations did not require they be accompanied by the third party's consent. The FOIA requests complied with the IRS's published rules and procedures, and so FOIA imposed upon the IRS a duty to search for

[11](...continued)
v. Dep't of the Treasury, No. 02-cv-173, 2002 WL 1901910 at *1 (E.D. Penn. July 9, 2002) (unpublished); <u>Helmon</u>, 2000 U.S. Dist. LEXIS 17628 at *10–*11; <u>Kim v. IRS</u>, No. WMM–99–2096, 1999 WL 1424998 at *3 (D.Md. Dec. 28, 1999) (unpublished); <u>Netzman v. IRS</u>, Civ. No. 3-95-248, 1995 WL 795143 at *1–*2 (D. Minn. Nov. 22, 1995) (unpublished). Granted, Plaintiffs did not call what they seek US West's "return information." But, as we have explained, they might as well have.

responsive records. Moreover, because those requests did not appear to seek third party return information, searching for responsive records, confirming that they exist, and withholding some as third party return information did not impermissibly disclose any third party return information. But Plaintiffs' FOIA request, as the IRS has made clear, fundamentally differs from the FOIA requests in those cases because Plaintiffs' request on its face seeks return information of a third party. As a result, FOIA and IRS regulations require Plaintiffs to file US West's authorization to perfect their request, triggering the IRS's FOIA duty to search for responsive records and preventing the IRS from impermissibly disclosing third party return information.

The FOIA requests and the IRS's responses in Church of Scientology of California v. IRS, 792 F.2d 146 (D.C. Cir. 1986), and Landmark differ from those cases, but they remain instructive on this point nonetheless. In Church of Scientology of California, the Church of Scientology of California sought *all* documents or records regarding the Church of Scientology and the Hubbard family. The IRS "limited the scope of the Church's request to documents pertaining to the California Church because the Church had not provided authorizations from any other Scientology entity nor from the Hubbards" and refused to search for those documents. 792 F.2d at 148. The District of Columbia Court of Appeals concluded that limitation on the basis of the FOIA request was inappropriate because all information in IRS files is not necessarily return information. Id. at 151. Before the IRS could withhold information, "it must make an appropriate showing that all

42

information [in the requested files] comes within the statutory definition" of return information. Id. Given Section 6103's generic grounds for exemption, described above, the court instructed the IRS to "either conduct a new search for information responsive to the Church's request that refers to third parties or establish through affidavits that all information about third parties in identifiable files requested by the Church is generically protected by Section 6103." Id. at 152. In contrast, Plaintiffs in this case have not requested all documents relating to US West. Instead, Plaintiffs' request explicitly sought solely a specific kind of information relating to US West—US West's submission to the VCRP, "including supporting documents, supplemental reports, informal and formal discovery requests, orders, if any, and the written and electronic (e-mail) responses given thereto, including the . . . IRS's Compliance Statement issued to U S WEST." Appx. at 238. And, the IRS has established Section 6103 generically protects all of that information, if it exists, from disclosure.

In Landmark, the plaintiff sought any and all documents pertaining to inquiries about and requests for audits or investigations of tax-exempt organizations, including the names of the people inquiring or requesting the audits or investigations, the names of the tax-exempt organizations that were the target of those inquiries and requests, and the IRS's responses to those inquiries and requests. 267 F.3d at 1134; 87 F. Supp. 2d at 22–23. The IRS conducted a search in response, "released several hundreds of pages of documents but also withheld thousands" and ultimately released

43

a <u>Vaughn</u> index of the withheld documents. 267 F.3d at 1134. Notably, the FOIA request in <u>Landmark</u> did not seek information about a specific taxpayer or person. So the IRS's search for those records and resulting admission that it had found them disclosed nothing about those third parties, not even their identities and not even that they were in the IRS's files.[12] Whereas in this case, a search for responsive documents and resulting confirmation that they exist would disclose the fact that a certain corporation and its pension plan had been in communication with the IRS about operational failures of the pension plan that could subject the corporation and pension plan to tax liability.

In closing, we come back to Plaintiffs' refrain: because the IRS has not looked at the requested information, no one knows what is in it; there could be nonexempt information in there, which the IRS bears the burden to prove there is not. For the reasons we have explained, the IRS has met its burden of proving all of the requested information—all documents associated with the IRS's handling of US West's 1996 submission to the VCRP—either pertains to US West's "nature, source, or amount of [its] . . . deductions" or is "data, received by, . . . prepared by, . . . or collected by

---

[12] Although, the <u>Landmark</u> court noted the IRS had engaged in an inconsistency on that point because it released to the plaintiff "letters written by representatives and senators (with *their* names not redacted), typically enclosing a constituent's letter urging that the IRS investigate a tax-exempt organization." 267 F.3d at 1136–37. Despite that inconsistency, the court concluded that "data" nonetheless "cover[s] the identity of third parties who urge the IRS to withdraw or reexamine an entity's tax-exempt status." <u>Id.</u> at 1137.

the Secretary with respect to . . . the . . . possible existence, of liability of" US West "for any tax . . . or other imposition." 26 U.S.C. § 6103(b)(2)(A). Plaintiffs have provided no persuasive reason to doubt the IRS's explanation. Yes, of course, anything is possible. But "[w]hen the moving party has carried its burden under [Fed. R. Civ. Pro. 56], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 US 574, 586 (1986), or that there is "a scintilla of evidence" in support of his position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). This Plaintiffs have not done.

Thus, although FOIA provides an agency must disclose any reasonably segregable non-exempt information, the IRS has demonstrated all of the requested information is exempt. Furthermore, "[t]he mere deletion of identifying material will not cause the remainder of the return information to lose its protected status, and document-by-document examination to determine the possibility of redaction for that purpose is therefore unnecessary." Church of Scientology of Cal., 792 F.2d at 151.

VI.

We also affirm the district court's decision not to conduct an in camera review of the requested information. The IRS has demonstrated with reasonable specificity why the requested information falls within FOIA's third exemption and Section 6103. Plaintiffs have not provided any meritorious argument that contradicts the IRS's claim. Nor have they asserted any colorable claim of bad faith on the part of

45

the IRS.[13]  As a result, the district court did not abuse its discretion in refusing to conduct an in camera review.  See Quiñon, 86 F.3d at 1227 ("'If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review of the documents.'" (quoting Hayden, 608 F.2d at 1387)).

## VII.

We conclude the IRS has succeeded in carrying its burden of proving that Plaintiffs' FOIA request on its face only sought US West's return information to which Plaintiffs are not entitled without US West's consent.  Because Plaintiffs have not provided that consent, the IRS properly withheld the requested information.  The district court's judgment in favor of the IRS is hereby

AFFIRMED.

---

[13] Plaintiffs briefly assert the IRS acted in bad faith by failing to respond to their request within FOIA's mandated twenty-day window for agency response. First, we doubt that failing to respond to a request within twenty days alone constitutes bad faith; rather, it seems to go to whether Plaintiffs have constructively exhausted their administrative remedies.  See infra note 4.  Second, it appears the IRS did respond in twenty days. The IRS evidently received Plaintiffs' FOIA request on April 22, 2008.  Appx. at 114.  FOIA provides the IRS had twenty days from April 22 "excepting Saturdays, Sundays, and legal public holidays" to respond to Plaintiffs' request. 5 U.S.C. § 552(a)(6)(A)(i).  Therefore, the IRS had until May 19, 2008 to respond.  The IRS actually responded on May 14, 2008.  Appx. at 113.

**No. 10-1410, Mary M. Hull et al. v. Internal Revenue Service, United States Department of the Treasury**.

**KELLY, Circuit Judge, dissenting.**

The court's opinion allows the IRS to reject a FOIA request without first conducting a search for the requested records. Because I believe the IRS had a duty to search for the requested records before rejecting the request, I respectfully dissent.

The court adopts the IRS's position that Plaintiffs, under Treasury regulations and FOIA, were required to obtain US West Pension Plan's ("Plan") consent before the IRS could begin processing the request. This is because Plaintiffs sought the Plan's "return information." Indeed, the Treasury regulations require a requester to obtain third party consent before the IRS can process a request for third party return information. See Treas. Reg. § 601.702(c)(4)(i)(E), (c)(5)(iii)(C); id. at 601.702(c)(4)(i). But based upon general FOIA principles, I do not think that we can accept the IRS's blanket assertion, without having conducted a search, that Plaintiffs' request necessarily seeks only return information.

FOIA generally requires federal agencies to disclose agency records to the public upon request, subject to nine exemptions. Stewart v. U.S. Dep't of Interior, 554 F.3d 1236, 1239 (10th Cir. 2009). Exemption 3 protects from disclosure records exempted by certain statutes. 5 U.S.C. § 552(b)(3). Section 6103 of the Internal Revenue Code—which provides that "return information" shall be confidential—qualifies as an Exemption 3 statute. See DeSalvo v. IRS, 861 F. 2d

1217, 1220-21 (10th Cir. 1988). The IRS can disclose return information if the party whose return information is sought consents to the disclosure. I.R.C. § 6103(c).

Thus, pursuant to Exemption 3, absent the Plan's consent, the IRS need not turn over any of the Plaintiffs' requested records if the IRS can establish that the request seeks only the Plan's "return information." But courts require agencies to conduct a search before claiming an exemption. As the D.C. Circuit recently noted, "[t]o prevail on summary judgment, [an] agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents. Even if the protected records could be withheld under one of the FOIA exemptions, that does not absolve the agency of its duty to identify responsive documents, claim the relevant exemptions, and explain its reasoning for withholding the documents in its affidavit." Elliot v. U.S. Dep't of Agriculture, 596 F.3d 842, 851 (D.C. Cir. 2010) (quotation marks, alterations, and citations omitted). To allow the IRS to claim that a FOIA request does not comply with its regulations, thus precluding any duty to search, obviates the requirement of a search under FOIA.

What's more, I cannot agree that the IRS has established that Plaintiffs' request, on its face, seeks only return information. Two of the IRS employees who reviewed the request merely stated in their affidavits that the request "did not seem to be a proper, valid FOIA request because the request sought a third party's return information but lacked authorization from [the third party]." Aplt. App. 175, 198. A third employee summarily stated that after reviewing the request, she "realized

-2-

that the requests sought a third party's return information." Id. at 182. The IRS should not be able to leap to a legal conclusion on this general request[14] without first searching the requested records and determining the factual basis for such a conclusion. In some instances, as the court notes, the IRS may be able to determine that a request seeks return information on its face, see, e.g., Ct. Op. at 40 n.11 (request for "Jane Doe's *return information*"); DeSalvo, 861 F.2d at 1222 (request for "names of all third parties whose . . . *return information* is contained" in a file (emphasis added)), but this is not such a case.

The court also accepts the IRS's argument that conducting a search would be tantamount to disclosing return information. I disagree. As an initial matter, the IRS did not raise this argument in its brief before this court, but rather made the argument for the first time at oral argument. We generally do not consider such arguments. See Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009). Regardless, I do not see why the IRS would be prohibited from conducting a search, and then explaining, without confirming the existence or disclosing the contents of the requested records, that the requested information is return information—much like it already has. Perhaps the Plaintiffs might not be able to challenge such a decision (if, after a search, the IRS determined that the request

---

[14] Plaintiffs requested "a complete copy set of all documents associated with the IRS handling of US WEST's submission in 1996 resulting in the IRS Compliance Statement, plus all other associated records in the agency's file." Aplt. App. 112.

sought only return information) in any greater depth than done here.  But we would at least know, as did one district court, that the IRS had fulfilled its obligation to conduct a search before determining whether any records responsive to the request constituted return information.  See Church of Scientology of Tex. v. IRS, 816 F. Supp. 1138, 1146-47, 1150-51 (W.D. Tex. 1993) (IRS located 2,167 pages of responsive records before claiming, in a Vaughn index, that certain records were exempted return information).